And our next case for argument this morning is Church Mutual Insurance Company v. Frontier Management. Mr. Cameron. Good morning, Your Honor, and may it please the Court, Clinton Cameron on behalf of Appellant, Church Mutual Insurance Company. This is a case about insurance coverage in relation to an underlying tort claim that was pending in the Circuit Court of Cook County, Illinois. The issue before the Court is whether the District Court erred in entering a stay in the case after resolving issues related to the duty to defend, and secondarily, whether the District Court erred in its ruling on the substantive issue in the case about whether or not a claim was made during the pendency of the policy. If a claim was made during the pendency of the policy, there was coverage for this matter. If no claim was made during the pendency of the policy, there isn't. This case comes before the Court on an unusual procedural posture, and a variety of developments have occurred during the appellate process that I want to highlight and be right up front about. In the first instance, we have questions about appellate jurisdiction. This Court has appellate jurisdiction under 28 U.S.C. 1291 because of prior precedent in this Court, in this Circuit, a case called Hellman, which was a very similar case and is controlling in a variety of ways. Before we dive into all of the intricate jurisdictional questions about appellate jurisdiction under the collateral order doctrine, whether this was really an abstention order rather than a stay order, all of those layered, multi-layered jurisdictional questions, to say nothing of the jurisdictional questions related to diversity jurisdiction, which is another can of worms in this case. Let's talk about mootness. The state court case, which was the reason that Judge Leinan-Weber entered this stay, has now been settled and has been dismissed. Why doesn't that moot the case? Or the appeal, not the case. No, of course. I understand the point. This appeal is not moot because of the way that Judge Leinan-Weber crafted his order. The order, the stay order, is not self-executing. It did not say that the case was stayed until such time as the underlying state court matter was resolved. If it had said that, perhaps the appeal would be moot, but it doesn't. What it said is that the case is stayed until such time as the district court lifts the stay. Now we're in a bit of a catch-22 now because now the case has been assigned to Judge Shaw, and he can't lift the stay if he wants to because of the appeal. Well, he can't lift the stay until this appeal is resolved, and if it's resolved by a dismissal because of mootness, then he can lift the stay. Exactly so, Your Honor. And that is self-evidently what he will do because there's no longer any reason for it. Well, I don't know for sure what he will do, and I don't think there's any insight in the record. There would be no basis to do anything other than to lift the stay because the only reason for the stay was the pendency of the state court action. The state court action has now been dismissed, so there is no world or scenario under which Judge Shaw would do anything other than lift the stay, put the case back on track, and deal with the remaining merits questions. I certainly agree that that is a reasonable expectation and more likely than not what Judge Shaw would do, but I just don't know. And right now, what I have— in Judge Leinaweber's order that needs to be done for the stay to be lifted because he made it clear he was imposing the stay for reasons of judicial economy to let the state court, where liability had already been admitted, but to see what the damages were so you could go forward in a more reasonable manner on the indemnification claims. And he was holding off on the bad faith claims for, again, for judicial economy. So what else is there to be done for the stay to remain in place? I don't want to be coy, but honestly, I don't know. The state court case is over, correct? Well, that is correct. And that was the basis for the stay. So what else could happen for the stay to remain in place? That was the rationale that was discussed in the brief hearing that is in the record. That is absolutely correct. Would Judge Leinaweber have lifted the stay? I think yes. Will Judge Shaw lift the stay? I think yes. But right now, I just don't know. And I'm obliged to comport myself with the record. And what the record in this case is that the order says until the district court lifts the stay, it's in full force and effect. And so the answer to the question of whether this appeal is moot is no, it's not. Mr. Cavanaugh, without getting into the details of the settlement of the state court action, we can reasonably conclude that the insurer was involved in that settlement, correct? That's correct, Your Honor. Thank you. And so now what will happen is that we'll have whatever result we have here. And if the case is remanded to Judge Shaw, then he can decide whether to lift the stay or not. But the critical component that we have here is this is a case where Judge Shaw hasn't had any experience with this case. This case was handled entirely by Judge Leinaweber, who unfortunately is no longer able to do so. That happens frequently. Of course. So I'm not sure how that impacts our analysis. Well, all I can do is act on the record. So help us out. How should that impact our analysis that now there's a new judge, which, again, is not an unusual happening? So we have an opportunity to resolve this case here. The court has plenary jurisdiction over a final order. The critical issue in the case is really quite simple. When a claim arose. It seems like what you really want us to do is to address the duty to defend ruling. That's correct, Your Honor. Why didn't you bring a Rule 54B? Well, I think at the time the decision was made that we couldn't have a Rule 54B because it didn't resolve an entire claim. The duty to defend claim was resolved. Well, this goes to this very fine dicing of the term claim, which pervades this case. The case law is very supportive of 54Bs on duty to defend. Well, in retrospect, perhaps that would have been the better course of action. This case presents a lot of complicated procedural issues and a lot of fine points of civil procedure. It's a federal court's book award kind of exam. Right. So why would we wade into all of that when the state court litigation no longer exists and that was the only justification for the stay decision and the only justification for appellate jurisdiction is the stay order, not the merits order on duty to defend? Well, we have an opportunity not to waste everyone's time here. And one of the things that has come up in the course of the appellate briefing is that there is a potential defect in subject matter jurisdiction because of diversity. This is something that was not raised below. This was something that was raised in the appellate briefs by the appellees. If what they say is correct, that they do not know the identity or citizenship of a variety of members of LLCs, we don't have subject matter jurisdiction. Right, and that can all be sorted out once this appeal is dismissed on mootness grounds. And it belongs in the district court for that purpose. I understand, Your Honor. I know that this court has sometimes looked at the record before it on diversity jurisdiction and decided that the better course would be to resolve the case and say that there's no subject matter jurisdiction at all. Do we have enough, though, to know Welltower OPLLC's citizenship? It sounds like discovery might be necessary for that. Yeah. The short answer to you is no, I don't. That's a challenge with us doing it. If we had the discovery and it was clear that diversity didn't prevail here, it would be one thing. But looking through the record, it seems like that LLC's citizenship is sticky and is going to involve some additional discovery. I think that is a fair interpretation. All I will say, though, is that the appellees were ordered by this court to provide information about the citizenship, and their response was they don't know. So if they don't know, I don't know how I'm going to find that out on remand. Well, they have to establish it or we won't have subject matter jurisdiction. You can ask the appropriate discovery questions. You know how to do that. Of course. And, of course, we will do that if that's what this court deems appropriate. I just think there is an opportunity here for us to avoid the further waste of judicial resources for which I'm sincerely apologetic. I think the circumstances that we find ourselves here on appeal are very undesirable. And, you know, I would rather stop wasting everyone's time if we don't have subject matter jurisdiction. But I take the point that it's hard for us. I'm all about efficiency, but it's hard to do that when you're circumventing the rules and the subject matter jurisdiction requirement, as you understand. I understand, Your Honor. So briefly, if I may, try to turn to the merits of why it was error for the district court to enter a stay in this case. His conclusion was at the time that he had claims about indemnity that were not justiciable and unripe. The remedy for non-justiciable, unripe claims is not a stay. It's dismissal. The Federal Declaratory Judgment Act provides the district courts have the ability to enter declaratory judgment only where there is an actual case or controversy that is justiciable. Likewise, Article III of the Constitution provides the grant to the federal courts of jurisdiction only for cases and controversies. In a circumstance like this, where there are matters that are not justiciable, the court, the district court is obliged to dismiss the case, not enter a stay in the hopes that someday it might become justiciable. Had that been done here, we would have had a more orthodox appellate. Isn't this case a little bit different, though, because of the liability had already been admitted in the state court proceeding? So I think that the record is a little bit— I'm sorry, we know indemnity is going to come into play. Liability has been admitted. It's just a question of how much. So the circumstances in relation to the admission of liability are a little bit unclear because it pertains to what went on in the circuit court. That's not in the record. But let's assume for the sake of our discussion that indemnity had been admitted—liability, rather, had been admitted. You still need to go to what kind of damages would be imposed and whether those damages are covered under the policy or not. Admittedly, the fact that liability had been admitted would be important with respect to whether there was a justiciable claim or not. But the district court himself found that the claim could not go forward until there was a final and complete adjudication in the trial court, which is correct. And all parties agreed it was correct at the time. So the broader point is that this court's precedent and the precedent in not only this circuit but also in the district courts is that when you have an indemnity issue that cannot yet be resolved because it is not justiciable, what the court should do is dismiss. And then, as I say, we would have had a final judgment on all claims for all parties. Very briefly, with respect to the merits of the claim issue, claim is defined in the policy two ways. One way is a suit. The other way is a demand for monetary damages. There is no dispute that there was no suit during the policy period. That leaves only the question of whether there was a demand for monetary damage during the policy period. And the sole evidence that was relied upon was a letter from plaintiff's counsel retained shortly after the decedent's death saying that he was writing to protect that law firm's attorney lien in the event that there was an ultimate payout after a judgment or a settlement far, far, far in the distance. The other part of that letter said that there was an obligation to preserve documents and pointed out that there could be consequences if the documents were not properly preserved, noting that there could be sanctions. The district court curiously attached itself to that language and said, see, there is an example of where there is a demand for monetary damages. Sanctions are not monetary damages. So that ruling on the duty to defend was also erroneous. And we respectfully ask the court to reverse and remand on that as well if the court proceeds further. With that, I see that I have two minutes left, which I will reserve if I may. Thank you very much.  Ms. Leffler. Good morning, Your Honors. May it please the court. My name is Amanda Leffler. I'm here on behalf of the appellees with Paul Walker Bright here in the courtroom as well. I'd like to start out, Your Honor, where you all started out with the doctrine of mootness. From our perspective, this appeal was not properly before the court in the first place and because the district court stay order was not final or appealable. And it is now moot. There is no live legal issue remaining related to this day. And while I appreciate what Mr. Cameron says, I think it is pretty clear from the district court's record, particularly the last order issued by Judge Shaw, that the court will, in fact, lift the stay as soon as it has the jurisdiction to do so. It is ironically only deprived of that jurisdiction because that order is up on appeal right now, which frankly, from our perspective, demonstrates why generally stay orders are not appealable in the first place. Because oftentimes this is exactly where we find ourselves, where the issue is no longer alive. Ms. Leffler, do you know the citizenship of Welltower OPLLC? I know the citizenship of the individuals that are the members of Welltower OPLLC. I know the citizenship of the LLCs and the partnerships that are that first layer of membership in OP. I do not know the layer beyond that. So we do not have, we have searched our corporate records, our transactional records. My firm did public records research. Mr. Walker Bright's firm also did research. We searched everywhere that we could. We don't have this information. And the problem is, is that we don't have a way to compel our unit holders to provide it. Everyone on this bench, everyone, every lawyer in this courtroom understands that citizenship isn't necessarily something that's always a secret, right? You have to disclose that when you're sued in court. But our unit holders aren't sued in this court. They would potentially consider that information to be nonpublic and something that they don't want to share. And we don't have access to it, nor do we have any contractual basis to compel them to provide it. There's no live person who knows the answer to this question? Not at Welltower. Not at Welltower, not at Frontier. Other entities that is traceable. So we'd have to keep going, right? We would have to keep going and we would have to be asking the LLCs that are, for example, there's an LLC that's listed as a member owning a teeny tiny fraction of a share of units in OP. We'd have to go to them and ask them, would you please share this information with us? Is there anybody who could say at least that none of them are citizens of Wisconsin? Because I think that's the issue. If they don't want to disclose where they're citizens of, the question is, is anybody a citizen of Wisconsin? Because that will defeat diversity. Maybe. Maybe we might be able to get there in the time allotted on this appeal. We were not able to get there. I can tell you that I have enough information that I can hazard some educated guesses as to the citizenship. That won't work. But it won't work. And so we didn't put it into our brief because that's not going to be enough. So your position remains the same as docket entry 33. Unfortunately, the insured search has not revealed additional information regarding the citizenship of these entities' members. That is correct. And we are requesting, Your Honors, we are requesting that this court dismiss the appeal as moot or as, frankly, non-justiciable in the first instance, and remand it to the trial court to deal with, to lift the stay, deal with any diversity issues that remain, and make a determination on indemnity and bad faith if and as appropriate. Obviously, that's going to be one of the first things the judge has to deal with. Yes. I think that's correct, Your Honor. I think that's correct. So as I said, from our perspective, this appeal, at this moment in time, it is moot. But, again, we don't believe that it was appealable in the first place, as this court is well aware. The final judgment rule precludes review of interlocutory orders. You either have to have a final order or you have to have a collateral order. We all agree there's no collateral order here. Thus, in order to be appealable, the stay order had to be final. Church Mutual contends that that order was final because it amounted to an abstention. Respectfully, it does not, frankly, even come close to looking like an abstention. There is nothing in the order that ended the litigation on the merits, left nothing but the entry of judgment at the end. And I think some of the questions that you put to my esteemed opposing counsel earlier are particularly relevant. This was a circumstance in which this district court judge ruled on the duty to defend. So the plaintiff insurer bringing its declaratory judgment action had its day in court, got the determination on the duty to defend. The underlying action liability was admitted. And that is relevant because there is no overlap in this particular case between what was going on in the underlying case, which was how much Mr. Nidos' estate was going to recover for his untimely death, and the coverage case, which I appreciate what Mr. Cameron says about needing to determine whether or not the damages fall within the coverage. But the reality of this case is the only coverage defense advanced by Church Mutual in this case was whether or not the attorney fee lien letter constituted a claim or not. It asserted no defense that there were a particular category of damages that would not fall within the coverage of this policy. And this isn't the subject of this, but I can tell you that I can't fathom such a defense being made, given no punitive damages were covered, no fines, no fees. This was purely compensatory damages awarded. All right. But that explains why we're here, because Judge Leinauoper's ruling on the duty to defend is dispositive of the duty to indemnify. In this case, because it's a claims-made policy, and the only policy defense was that this is not a claim within the meaning of the policy. And so it's not one of those cases where the duty to defend is different analytically than the duty to indemnify. So the tail is wagging the dog here. I agree with you completely. But for purposes of determining abstention, what determined Church Mutual's indemnity application was Judge Leinauoper's duty to defend decision, where he exercised his jurisdiction. That issue, the duty to indemnify, still wasn't getting determined in the state court action brought by the need office state. So there's still no deference. That abstention doctrine requires the federal court to say, I'm not going to decide this issue. I'm going to let the state court decide this issue. That's not what happened. Judge Leinauoper exercised his jurisdiction, decided the issue, and yes, for all intents and purposes, it decided the duty to defend issue as well. I'd like to briefly address, to the extent that the court reaches the question of whether or not the stay was proper or not, it was proper here. I acknowledge that it would have also been proper under this court's jurisprudence to dismiss. It would have been proper to dismiss. But it was well within Judge Leinauoper's exercise of discretion to grant the stay under these circumstances here. And I've already described them in great detail, so I won't bore you all with them now. But the bottom line is that he had already issued his decision on the duty to defend, and we were in a position where we had trial coming up within three or four months of the issuance of the duty to defend order and the trial of the underlying case. Liabilities are admitted. You have all of these things. Frankly, Church Mutual, in its complaint, remember, Church Mutual brought this case. Church Mutual, in its complaint, it also alleged an indemnity claim that then it later said to Judge Leinauoper, no, no, no, that's not right. You not only have to dismiss the counterclaim on duty to indemnify, but you should also dismiss the claim that I brought in the first instance. Under all of these circumstances and given the broad discretion that our district courts are afforded in controlling their dockets and determining when judicial efficiency compels the issuance of a stay, the court's order was appropriate here in our view. Lastly, I'll address the substance. Again, we do not feel that this court should reach the merits of the decision, though I will agree with Mr. Cameron that I think this is a pretty simple issue for this court someday or another court to determine and agree with Judge Leinauoper's well-reasoned decision that the demand letter here falls within the definition of a claim. This letter identifies the claim, the claimants, the counsel, the harm, the injured party. It says, you're going to pay me, the plaintiff's going to pay one-third of any recovery for the claim. When it talks about the protection or keeping the documents and making sure that you maintain them all, the letter says, as discovery in this case proceeds, the question any reasonable reader would read that and would conclude that there is a live dispute right now. Any reasonable reader would understand that. I think it's important to point out the standard as well because under this circuit's jurisprudence policy and the state of Illinois' jurisprudence, the policy construction principles here I think are important. The policy does not define damages. The policy does not define demand. The policy does not require that plaintiffs use any sort of magic words or say, I demand, in order to trigger the coverage. It says none of those things. And the policy, any ambiguity in the policy has to be construed in favor of the insured and in determining if there's any ambiguity, you should read the policy both in light of the insured's reasonable expectations and also in light of the purpose of the policy. And the purpose of the policy is very clear. When you have claims made coverage, only one policy is going to apply. There's only one period of time when a claim actually occurs. And the purpose here is to make sure that if somebody walks into your shop and says, I'm going to sue you for this, or posts a negative Yelp review where they say I'm bringing a lawsuit, that's not enough. There has to be something more. But when you have a letter that specifically says, identifies a claim, claim it's counsel, all of those things, and says I'm going to recover from you one-third of the damages for the claim, of any damages, excuse me, for the claim, that is enough to constitute a claim under the definition of the policy, especially when you view it in light of well-established black-letter law. The occurrence also occurred, as I understand the chronology, during the period in which the policy was enforced. So this is not one of those oddball cases where we've got a disconnect between the date of the occurrence and the date of the claim. That is correct. That is correct, Your Honor. And frankly, holding the way that Church Mutual asks this court, or someday some court, to hold on the claim issue is particularly problematic. We, as insurers, do not want to be placed at the mercy of plaintiff's counsel effectively guessing the specific language of a policy that it has never, usually, has never seen at that point. The plaintiff's counsel will get it as part of discovery, but they often don't have it at this stage of the game. And it should not be required that there be magic language in the letter. The reality is here that it is necessarily implied that there was a claim for damages in order for the attorney to assert its lien right in those damages. We, as attorneys, have ethical obligations. I can't assert a lien right in something for which there are no damages. Now, Church Mutual says, but the attorney's lien is speculative. Okay. So are a plaintiff's damages. If you had the most clear, I, Amanda Leffler, demand a million dollars from you, that's still speculative. The fact that it's speculative doesn't change the fact that there is a demand for monetary damages. And frankly, the demand for one-third of those fees, for one-third of the damages as fees, that's a demand too. Again, nothing in the policy requires any sort of magic words. So, Your Honor, with that, I have concluded my remarks. Are there any other questions that I can answer? Thank you very much for your time.  Mr. Cameron. Thank you. Very briefly, the issue of mootness has been, I think, beaten to death, so I won't do it anymore. The issue of whether this court has appellate jurisdiction, however, is a different matter. This court does have appellate jurisdiction. This is controlled by the Hellman case, which I referred to earlier, which is very similar to this case in many respects. It was an insurance coverage dispute where the trial court deferred to parallel tort litigation, in that case in Indiana, for malpractice. It's on all fours with this case. The issue about what is a claim and what is not a claim, it's important to understand, as Ms. Leffler pointed out, that you're creating a rule that will apply to insureds, not just in this case, but in others. There is a potential trick box that will be created for insureds when they get letters from lawyers saying, I may have a lien claim or I may have a claim sometime in the future, using claim in the way we use that term in the vernacular. If you get that letter and you're an insured and you don't put your carrier on notice, then you may find later that you're told that you provided late notice and you will have no coverage. That's why the term claim must be defined in a clear way with everyone's expectations being what a policy says, not how we use the term claim in the vernacular. They're different. The policy defines claim in a way that average people on the street might not. That's the reason it has a definition. It means a suit or a demand for monetary damages, not the idea that I have some kind of claim in the future, based upon something that happens when I file a lawsuit. So it is important that this court and that the Illinois courts have a consistent application of the words in the way they are defined in the policy, not the way that people speak. With that, unless there are any questions from the court, I thank you for your time. Thank you very much. Thanks to both counsel. The case will be taken under advisement.